I'd like to reserve five minutes for rebuttal. May it please the Court, William Trace on behalf of Fidlty. Just as an initial housekeeping matter, Your Honors, when I began preparing for this oral argument this weekend and read the briefing, as an officer of the Court, I have to apologize to this Court for the brief that was filed on behalf of Fidlty on January 5 by Mr. Dajon. It's not of the ilk of what this firm usually does. I don't think it addressed completely the Pye's issues. But I'm in no disrespect to this Court or to the Pye's at all. Mr. Dajon is no longer with our firm. He left shortly after filing it, but as a part of the firm, I must fall on my sword and apologize for that. The proof of loss argument, Your Honor, we had two issues on appeal. I do, but maybe this goes to the bad briefing. I have a question just procedurally about your argument. You brought your cross appeal about these, what, a couple thousand dollars in auto parts damages that were awarded, which they now concede was improper. And you're also saying, oh, but it's also invalid because of this proof of loss, which looks like a difficult issue. Why do we even have to decide that issue if everyone's agreed the auto parts award should go away? Well, I think the proof of loss is the prerequisite to getting there. And the only thing the magistrate judge awarded was, what, $2,500 or $3,000? And everyone's agreed that should go away, so what are you appealing? Well, I guess it goes to if the one satisfactory was not properly applied and the court is going to reverse Judge Freshner with regard to, hey, I think this is an estimate that should have been used. Still, you can't get there without having the prerequisite of the proof of loss. So it's if they make traction on their appeal. The problem I see with that, and again, this might go to the issue with your former colleague, you didn't raise it in response to their brief. And I know cross appeals get tricky, but I don't know if that matters. But I only saw it raised in your affirmative appeal, the proof of loss issue. I think it was in our first appeal was the proof of loss. And it also was in our response to theirs. I've never been involved in cross appeal either, so this is new territory for me. But as far as the proof of loss, the point of the rule is to have the insurance properly present their claim. And then the other point of the proof of loss rule actually is to avoid litigation. The reason we'd ask for oral argument in this case is that there is a trend in NFIP litigation to where now we are seeing these proofs of loss submitted for policy limits, have some scant documentation attached to it, and it's now being treated as sort of this procedural speed bump. And does the proof of loss rule, does the prerequisite requirement, does it have life, or is it now form over substance? The court had talked about, well, Fidelity is using this and is looking at this to Draconian, and the plaintiff's looking at more of a lax approach. Well, somebody has to be right. And these policy limit proofs of loss we're now seeing in the Northeast. So they have to match exactly? That's a great question. If it's less than policy limits, Your Honor, yes. And let me explain that. Article 7J5 of the policy says you must use your own judgment. And that was a big deal that the Pies had done during trial and in their briefing. But they failed to look at the second part of that provision that says you must justify that amount. And the lump sum estimate by Ms. Lovato that was supported is for $175,000. Does it justify that amount? So it's deficient on Article 7J5 in that respect. But to answer your question, Judge Higginson. But it does justify large amounts of it, right? It's not a complete failure of the insured to submit anything. They have to submit something in support of that amount. That would be a complete failure of the prerequisite requirement of the proof of loss. If you submit a proof of loss with no documentation, there is a ton of cases that says that is an invalid proof of loss. But a lot of those are the cases you were citing, right? Gowland and Richards? Correct. So what's your case that's more analogous to these facts where there is a justification for whatever, how do you pronounce his name? Lovato? Lovato. Yes, Your Honor. But it doesn't match exactly. It doesn't match exactly. What's the case that applies to that? Sunray Village is probably the best case. It's by Judge Rogers out of the Northern District of Florida. There's not really a whole lot of cases that goes that where the court will tackle the hard issue of whether or not documentation is sufficient under the policy for specification of the building damages and detailed repair estimates. What Judge Rogers did, she never got to that analysis, but she did at least give a bottom line. Hey, your documentation must at least list out the components that are damaged and have a price for each of those components. This court set the standard of how you would look at it in the foreman decision. And what the standard of care is is that, let me get the quote, did the insured, quote, provide any sworn information whereby FEMA could evaluate the merits of the claim? That's at page 545. And there are several district court decisions after that, mainly in the Eastern District of Louisiana. Couldn't the merits of the claim be evaluated here based on the lower amount that the supporting documentation supported? Correct. So the proof of loss is for limits. That amount was not justified. The amount that was supported was this $175,000, the lump sum by Mr. Lovato. So when you look at that, that is a de novo type review because . . . Is that $75,000 difference in the proof of loss claim and the supporting documentation? There is a $75,000 difference, but 50 of that is for contents, which I don't believe is at issue in this case. It's mainly the building. $45,000? It's about $30,000, Your Honor, because the policy limits for building was $205,000, and the building lump sum was for $175,000. So there's a $30,000 difference. There are two undisputed facts here that make this a de novo review. Because Mr. Lovato, who is the author of this lump sum of $175,000, he testified at trial, based on all his documents, my lump sum and my price ranges that are attached to it, he could not tell the trier of fact, Judge Freshner, how he came up with the number. You can't evaluate the merits of the $175,000. And then the recipient of that, Ms. Price at Fidelity, says, yeah, I couldn't figure it out. So it can't be done. I'm trying to figure out your position. I understand you're saying Lovato's submission wasn't good enough, essentially wasn't detailed enough. But if his submission had, you know, dotted every I and crossed every T, even though it was lower than what's on the proof of loss, would that have been sufficient, at least for that lower amount? Yes, Your Honor. And that's the whole point, is that under the form of decision, it has to be enough to where you can evaluate the merits of that claim. So the discrepancy isn't itself a problem as long as the supporting documentation is sufficient? I think that's for the court to decide. It's the regulations. It says you have to justify it, right? Correct. And are we going to go that far to where, hey, your proof of loss is $205,000, but your documentation, let's say it was correct, it was line-by-line estimate. Are you capped at this amount over here? I can't speak for FEMA, but in my experience of doing this for over a decade, FEMA will pay that amount. That was justified. Does it invalidate the proof of loss in totality if you do the strict construction? It does. Does the court want to go that far? That's for the court to decide. But in this particular case, we don't even get there because of that lump sum. The person who wrote it couldn't even justify it and couldn't explain it, and neither could fidelity. And what the court did, what Judge Freshner ruled upon, when you look at the rulings, he says the evidence before him was enough for fidelity to begin the evaluation of the claim. And with all due respect, all of that was the court found that the pies had complied with Article 7J1 of the policy, which is give written prompt notice of your claim. All that was was enough to say, hey, this is my supplemental claim, and it's in writing. But it doesn't fall in Article 7J4 where it's detailed enough of a repair estimate to allow the company to evaluate the merits of the claim. How does this work, just as a practical matter? Once you submit a proof of loss and they look at it, do they accept everything that is on there? I mean is there any further on-site evaluation by the insurer? As on a case-by-case basis, and yes, sometimes if it comes in and it's detailed enough, what most companies will do is they will send the documentation submitted by the insured, whether it was on their own or by a public adjuster or by their lawyer, whatever their representative is. They will forward that to the adjusting company because they have all the photographs and the documents and say, hey, look at this. They're asking for more money. And my client doesn't care. I have no interest in it. I have a financial interest to pay more. And they say, hey, look at this. And they will make that decision whether or not we need to go out and do another inspection or no, the photographs are sufficient that we have. Whatever your client submits to FEMA, they'll pay? Correct, if it falls within FEMA's rules. We are the fiduciary and that fiscal agent. I mean, just wide open for somebody to game the system left and right. I mean, it just looks like to me just very loose rules by which FEMA is paying claims. It is, and there's also checks and balances to that. The IPIA, the Improper Payment Information Act, applies to the flood program, so there is your checks and balances to make sure. Improper payment, I mean, they can come back or they can criminally prosecute? They can if that's the situation where there isn't. I don't know anything about criminal laws, but the element of fraud, I don't know that. There's basically nothing to keep a claimant from just jacking it up $15,000 and saying that's close enough for government work. If the insurer would jack up the? Yeah, if the insurer would, and then the insurer says, well, I'm going to be paid irrespective. So, I mean, just throw it on over to the government, let them send them a check. I think the checks and balances with the IPIA and the IPERA also apply. Keep that in balance to where, hey, you're going to get penalized if you do pay more than what you're supposed to pay under the program, under the rules and regulations. If there is an inflation by the plaintiff or the insured, the homeowner, then under the rules and regulations, the companies have a duty to inform FEMA of that notice. It creates all kinds of moral hazards, as they call them. I mean, for a claimant, knowing that it's going to get a very loose look, it's going to submit bills that are questionable. I guess you're here as the gatekeeper. Correct. Yes, Your Honor, absolutely. Is it easy to tell us the portions of the brief that we shouldn't rely on? Shouldn't. Your opening remark about the brief. My opening remark is that our brief only spends four pages responding to the plaintiff's three issues of appeal. That's what I was apologizing to. So, inadequacy as opposed to misstatements of law or fact. That's correct, Your Honor. That's correct, Your Honor. There is a term that the court has done in the Northeast. They call these proofs of loss placeholder proofs of loss. I don't speak for FEMA. I represent Fidelity. We just follow FEMA's rules. But if you want FEMA's position on a placeholder proof of loss, there is a recent case called Admiralty Condo v. FEMA, 594 Fed Appendix 738. And that was when Third Circuit had affirmed FEMA's motion for summary judgment that a placeholder proof of loss for limits is not past muster as far as their rules and regulations. Now, in this case, your client, Fidelity, did they send the application or the proof of loss back to Mr. Berman and said, look, this can't be justified on the documentation you've supplied? It was not an accurate reflection of the damages, yes, Your Honor. Yes, Your Honor. Is there any kind of rule that your client files, that your client follows in which they do send it back? Like, I mean, look, the claim here is for $250,000, and that's $30,000 more than the documentation will justify. And we're just going to send it back? Is there a cutoff point? Well, they will reject that proof of loss, and they rejected it in this case because they couldn't determine the merits of it. It wasn't like, okay, you gave me a line-by-line estimate, and we did miss $30,000, $40,000, $50,000. And could they pay an undisputed portion? They could. But in this case, since they couldn't understand and evaluate the merits of the $175,000 loan sum, it was rejected, and that correspondence went back to the lawyer. Two final points. I don't understand that. I mean, the proof of loss is what the insured swears to is a reasonable estimate. In this case, the insured never even saw it. They just – I mean, they saw what the total was, but they never saw any documentation, saw no justification for it as I understand the facts. And yet they would loosely swear – swore that that was their claim justified. And I think Judge Fresher had an issue with that in this case. So, I mean, they – it just – anyway. I think Judge Fresher had an issue with this case because Mr. Pye – Now, under what obligations are you justified in or required to or can pay a lesser claim than the proof of loss if they have sworn to? I mean, do you do that ordinarily? You do, and let me explain how that happens. If that happens to where, hey, let's say a sworn document came in. It's attached by a line-by-line estimate. It meets all the requirements of Article 7J. And the company says, well, you know what? There's about $20,000 or $30,000 here that we missed. In reality, what the company does is that the company will prepare a proof of loss for that undisputed amount, send that to the insured or their representative for them to sign and have it sworn, and they will pay that amount. Every dollar that goes out the door will go out with a proof of loss statement. With the deficiencies in the briefing, you were about to say I want to finish with two points. I'd be interested to hear what your two finishing points are. My two final thoughts on the proof of loss. First of all, if the independent adjuster that Fidelity sent out had done a lump sum, just like Mr. Lovato did, and turned that into the company, Ms. Price had testified, page 856 of the record, that there's no way Fidelity could have paid that. So then why does it matter who sends it? It's deficient. And the second point, the last thought I'll leave on the proof of loss is this. If plaintiff's proof of loss P1, it's in the record excerpts, if it was sufficient as they argue, then why even prepare a line-by-line estimate for trial? Because that's what's needed for the court to try, in fact, to go through and figure out, hey, Fidelity, this is what you missed in this room. I disagree with this price. Fidelity, you had repaired this item. I think it needs to be replaced. Those are the last two thoughts on the proof of loss. All right. Your Honor, go ahead. Mr. Mayo, you may proceed. If it pleases the court, my name is Martin Mayo, and I represent the pies in this case. Your Honor, there's obviously some evidence missing here that you're not aware of in this case. I want to talk about this proof of loss right up front. First of all, you have to understand that with regards to a proof of loss, there's almost no information available to an insured when they're preparing their proof of loss. If you look at a standard flood insurance policy, it says you need to fill out a proof of loss, use your judgment, and then justify your damages. Use your judgment and justify. Right. And they did not say prove. They said justify. And one of the traps for an insured, there is a time limit in which you can file a proof of loss. After that time, you cannot file one unless you get waiver from FEMA, which often may not happen. So, in a case like this, this gentleman's house was badly flooded. He did not have enough money to make repairs to his house. He had to file a proof of loss before all repairs were done. It was his opinion, because he had completely remodeled his house previously, that the ultimate cost of the six feet of water in his house was going to far exceed the policy limits. That was what he testified to at trial. I believe that the total amount that it will cost to fix his house, in fact, exceeds the policy limits. That's why he testified to that, and that's why he signed that proof of loss. At the time the proof of loss was filed, there was only enough documentation for the $175,000 or so that Mr. Lovato had. What about the first proof of loss where he's paid $75,000? That's prepared by the insurance company after they go out and look at the house. And they look at it, and they prepare it, and that's what leads to the second proof of loss. And that's without prejudice to someone filing another proof of loss? You can file as many proofs of loss as you want until the deadline. By contract, it's 60 days under the policy, but in this particular case of Ike, FEMA gave two extensions, which took it out to 11 months. So before the 11th month expired, that's your last chance to file your proof of loss if you think there are more damages. And that's what happened in this case. In fact, there was another report sent after the initial proof of loss with a much greater detailed report, which had damages that came close to supporting exactly what the homeowner said. There is no provision in the policy or anywhere in NFIP I've seen that says you cannot supplement your proof of loss after the deadline with additional documentation. In fact, there's a bulletin and the head of claims for ---- Let me ask you why did your client in this case take the position instead of amending the proof of loss after it was sent back to him by fidelity as inadequately documented, to simply file suit? Well, we did file suit after that, but you can't. Why didn't you go back and say, well, this is you asked me to further justify the claim that I'm making. Here it is. And we did. That, in fact, happened. Another report went out ---- Before you filed suit? Yes. It did. We had until a year from rejection of the claim to file the lawsuit, and there was ---- Was the additional documentation that you filed to support the proof of loss that was filed by Mr. Berman? Yes. Okay. What was it? It was a complete detailed report. What happens is ---- Did it support or justify the amount that Mr. Berman alleged in his proof of loss? It's my recollection that it, in fact, exceeded the amount of the policy limits, and the policy limits is the most you could ask for. That's my recollection of that. And so that's the problem. One of the problems we have in these cases is there is no guidance for and ensured when they're preparing these proofs of loss. There is simply no information. In fact, the proof of loss form itself calls for you to calculate the amount, you the homeowner, to calculate the amount of depreciation that applies to your home. There is not a definition for how you are to calculate that anywhere in the policy. In fact, both the NFIP manuals, every document that's attached and related to the NFIP, no document explains to an insurer how you are to fill out your proof of loss. Nowhere does it say here is what constitutes justifying your report. Now, it's interesting. If the client chooses to appeal rather than filing a supplemental proof of loss, and that's go directly to FEMA and say we are complaining you're not paying enough money, there's an extensive list of documents that they want you to provide. That's not related in any way in the proof of loss process. It doesn't say in preparing your proof of loss, refer over to the appeals process and the documents we require. There is simply nothing there. All of that was confirmed. It's interesting because at trial I asked the head of claims for fidelity. I said, now what do you use in your home office when you're— Let me say, my problem with this case is that the proof of loss that was filed here is unsupported. There's one proof of loss that we issue here, and that's the second proof of loss that was filed by Mr. Berman. Now, you are telling me that before you filed suit that you supplied information by your client that supported the amount that Mr. Berman had filled out the proof of loss for? Yes, Your Honor, that's correct. Before a lawsuit. And then what happened? Did fidelity say I'm not going to pay, and that prompted this lawsuit? They did. And that brings me to something you— Okay. Now, why did they say they weren't going to pay the second time? Because they didn't agree that additional monies was owed. Because they said your documentation still did not justify the amount you were claiming. They would not pay additional monies based on that. One of the things I want to point out is you were talking about homeowners gaming the system. That can't happen. I can tell you we have submitted over 150 of these claims. Over 100 of them have been resolved, and these exact same documentation was used in almost all of those cases, this type of documentation. There is nothing that prohibits a homeowner from filing for what they believe to be the full amount of their damages, even if they're not yet able to support that when they file the proof of loss. There's simply no case law, and there's nothing in any NFIP documentation, the Act, or anywhere that supports that. Secondly— That's not about gaming the system. I'm not talking—I'm not faulting anybody. I'm just saying that it presents a moral hazard that any person who's looking after their own interests in a legitimate kind of way that people look after their interests are going to file a claim that exceeds what the reality is. Everybody thinks a house is worth more than somebody's willing to pay for it. All I can say is this. In our cases, we used a—Mr. Lovato is a man who had been doing—is actually repaired. In fact, there were a bunch of houses recently damaged in Pensacola. He did repairs on those buildings and actually rebuilt them after they were damaged by flood. He has extensive experience in handling flood claims. And we asked him, when you write your flood estimate, give us all of the things that you understand to be covered by a flood policy. And in fact, what you saw when you went out there, that was actually related to flood. And the thing is that FEMA hires the WIOs as their gatekeepers, and they have trained personnel to go through these estimates and make sure that all the items claimed are in fact substantiated. There are photographs that are taken. There are measurements that are made. And I can tell you this. One of the problems that we've run into in dealing with these cases is that FEMA will go back and audit the files of the WIO. And if they determine that that WIO has overpaid the claim, they will make them disgorge those funds back to the federal government for overpaying the claims. That's what happened to Katrina. Katrina, they went out, they tried to resolve all the claims. FEMA came back, audited the WIOs, and made them disgorge an extensive amount of funding. And that was one of the problems we've had. That has caused a retraction and a fear by the insurance companies of overpaying claims. And so they go the other way and are very conservative in their payments, and that's why we wound up with 150 lawsuits is because our experts and there are also public adjuster's reports in many of our claims where two parties other than the insurance adjuster had gone out and looked at it. And in this case, it was the testimony at trial by the experts sent by the insurance company that in fact the client had been underpaid by over $70,000. The head of claims for Fidelity agreed. She said, yes, we underpaid this claim by over $70,000. Okay, and then what I would like to know is how does Fidelity explain such a drastic mistake? That's a big mistake. Your Honor, if I could understand that, it would make this process so much better. I've been frustrated by this because that's one of the problems that we've encountered in these claims. The arbitrary positions they take and the way they defend the claims just doesn't make any sense. But they're in a predicament when they get a proof of loss that exceeds the attached justification, right? In this case, the magistrate found that your client hadn't even looked at the Lovato justification that was significantly less than the proof of loss. But what happens practically in all of these cases is the WIOs go back and review every claim. And in our cases, in a lot of them, they actually send the adjusters back out frequently. If there is a dispute about the claim and a proof of loss comes in like this. I guess what I'm asking, there doesn't need to be any correspondence between the proof of loss and the estimate? So if your client had signed a million-dollar proof of loss and attached a $50 justification, no consequence? What's the client to do in this particular case, Your Honor? I can tell you what the client has to do in this particular case, and that is he asked to see the justification that supports the claim he's making. He did not do that here. He didn't exercise his own judgment about it. But he did use his judgment because he had repaired his own house previous to the storm completely removed. He didn't know the documentation that was supporting his claim. That's irrelevant to him in his… It's irrelevant. It's irrelevant to his belief, to come into his belief about what the damages are. It's important. What's the case that stands for that? There is no case. That's one of the problems we have in this. There is every case cited in either of the briefs. Either there was no proof of loss, the proof of loss was filled out incorrectly, or there was no documentation at all. There's never been a case that's addressed the issue of does a proof of loss, dollar for dollar, have to match the underlying data. But he cited the Florida District Court opinion. I don't know if that was in the brief. Oh, that's right. That turned out that they never submitted their documentation. They filed a proof of loss. They never filed any documentation, and that was the problem with that case. It's hard to believe this scenario has never come up, but you're telling me it hasn't? It hasn't. And I think one of the problems is there's no attorney's fees in these types of cases, and so I think people rarely appeal in these kinds of cases. And that has never come up. Where are all these line of cases that say it must be absolutely strict, you know, your proof of loss has got to be conformed to your documentation, and if your proof of loss is not satisfactory, you are out of luck completely? There's no case law on that, and the policy doesn't provide that. FEMA's documents don't provide that. When we took the testimony from the head of claims for fidelity, none of this stuff exists. I asked them, their evaluation of what constitutes sufficient justification. I asked her, what do you go by in your office that you have a list, a form, a chart, anything that says, when I see this, I know whether or not it's sufficient justification. Is it fidelity or FEMA? No, fidelity. Fidelity is compelled to comply with FEMA. If fidelity did send one back, I guess we assume that it was not justified if they just accept all of them. The point I'm making is, though, Your Honor, they don't have any standards. There are no standards by which. Her testimony in sum was, we know it when we see it, and that's in essence what she said. And there is always, in litigation like this, there's always a dispute about have we substantiated that or not. And we have managed to settle over 100 cases, working with FEMA, using basically the same standards we're using here. What about his suggestion that the Third Circuit's address the placeholder proof of loss? First of all, I would disagree that this is a placeholder proof of loss, and I've not seen that case. I was totally unaware that it existed, so I don't know anything about it. Again, the client is trapped in the position of, in his own mind, based upon his historical experience, he knows that the cost to repair his house exceeds the policy limits. And if he doesn't ask for that in this proof of loss, even if he has to substantiate it later, he's out. Because if he tries to file a proof of loss after the time. But if that's the rule, why won't every single client always ask? Because a lot of times their homes are repaired, they know fully what the costs are, they brought a contractor in and they can fully document that. What happened in this case, the client got underpaid by FEMA, or Fidelity. They got some money from the wind carrier, but it was not nearly enough to allow them to repair their house. Where's the location? Galveston. In Galveston? Galveston. Yes. And water and wind? This house had six feet of water in it by measurement of the claims adjuster for Fidelity. So, we believe that with the lack of any kind of standards as established by Fidelity or under any authorization by FEMA, that we have met our obligation to provide proof of loss to begin the process. And again, as Judge Frechner correctly described, this is a draconian interpretation. If you follow their interpretation, when there are simply no guidelines. All it is is a penalty. I mean, it's a debt. I understand your argument that everybody has to file a proof of loss for the maximum they think they're going to. But that's not the law, and that's not the regulation. The regulation is they have to justify it. That's right. And we're here about this case, and the fact is. . . And this client did not justify it. But he did. He justified $175,000 of the initial part. He justified it? He never saw it. It doesn't matter what the source. . . It doesn't matter whether he swears under oath? He swore under oath, Your Honor, that he had made the calculation himself in his own walking around his home and knowing what he had done in the past. That's what he signed? That was the statement he signed? He testified to that at trial. The judge took. . . Proof of loss that he signed under oath. Did he say, I've just walked around my house and checked it? No. I mean, the assumption was that he had looked over the documentation and that that was, in fact, what he had spent to repair his house or what the damage was to his house. No, that's not what it says. It's not what you spent. I don't mean what you spent, but what he assesses of what the damage is. Right. He believed. . . I understand the distinction between the two. But in this particular case, his testimony was that he is caught between a rock and a hard place. I can ask for what I know to be $30,000 or $40,000 less than what my actual damages are going to be, or I can ask for those damages and file a supplemental. . . Can you imagine an opinion from this court that says that anybody who suffers one of these damages can file for the maximum and we'll just see how it falls out later? But that's not true, Your Honor. It is what do you swear the evidence is as to what you believe the costs were, and he believed that was accurate. What are the consequences if he's later shown wrong? I'm sorry? What are the consequences if he's shown to have been wrong? None? No, the court would not grant him the damages. In fact, in this case, we had a complete two-day trial of this case, and during the course of that, the court heard discussions from both parties about what the damages were. Both of you have practiced in this area a lot, and you're acknowledging their intermediary role as a gatekeeper. So what's the common ground rather than you can always claim max or what you think is unrealistic that the claimant has to at the outset know precisely an estimate? There's no case law you're saying, and you don't have any common ground with their predicament as the intermediary? The only common ground is if you don't do what we did, you put yourself at the mercy of FEMA by filing a late proof of loss and requesting that they grant waiver. In my experiences, that's a huge risk to take, and we chose not to take that risk. That was a risk that we just weren't willing to ask our clients to take. I want to address your challenge. We've only got a couple minutes left to the judge's application of the rule against double recovery. Actually, the one satisfaction rule, Your Honor. Well, that's what he called it, but it's called different things in different places. Well, I disagree with the interpretation because I view the one satisfaction rule of being there's a certain amount of money. I think there's a double dipping rule that if you're being paid by two different parties but for the same damages. Why doesn't the double dipping rule apply? First of all, there's no federal basis for it. There's no case law to support it. Secondly, Is there any federal basis saying it doesn't apply here? It hasn't been addressed. So it's first impression. It is. But by definition, it can apply because one satisfaction rule deals with the issue of an indivisible injury. And I can tell you in a flood case, the flood adjuster and the wind adjuster are highly trained, and they go out to these houses. The policies say the wind says we're not paying for flood. Flood says we're not paying for wind. And they are trained to determine which part of the damage was caused by wind and which part was caused by flood. And so when an estimate is written by the flood adjuster, it deals only with that part caused by flood and the wind only by the wind. So in this particular case, it doesn't meet the definition. The report you submitted with Lovato, he does say this is all flood damage. It is. But he doesn't say I found this other damage that I'm just attributing to wind. The role in a flood claim for the person you hire, since we were only representing the client for the flood claim, was to identify flood damage. We had no responsibility with the wind. Somebody else handled the wind claim, and there was a separate group and separate adjusters who dealt solely with the wind claim. What about Bradley v. Allstate? I'm sorry. I can't remember the facts of the case. So just the general proposition that the insured can't be in a better position than he was at the outset. I understand that, but it was misapplied in this case for a couple reasons. Number one, there is no statement anywhere within NFIP regulations or the FEMA policy, the standard flood insurance policy, that allows the use of market value in determining what constitutes the maximum value. It's the actual cash value, which has nothing to do with market value. So that's number one. Number two, there's nothing within the FEMA policy that says that in assessing it, if the client chooses to sell his home, then they get a credit for what he sold the house for. The damages are measured at the time of the loss. Both those cards aren't going to whether there would never be an assessment as to the wind and rain. That's just working out the mathematics. But do you have an answer as to whether or not insured can be better off if, in fact, wind has been compensating for the same damage that the flood did? I agree that if wind had paid him already for something that flood was being asked to pay, that would not be correct. They shouldn't do that. There is a distinction between the damages, and we have been very careful in our attempts in handling these claims never to include an item in our flood request that would have been covered by a wind claim. And yet you were just saying you don't know what was covered by the wind claim, right? It wasn't an issue in this case because it's our position is if you're going, they did not plead and ask to use that one satisfaction rule. They did not ask for a trial amendment. And then so in order, it becomes their burden then to show that the wind had actually paid for something we were asking for in flood. There's no testimony in this case that wind paid for anything that flood was paying. Okay, Mr. Mayo. Thank you, Your Honor. Thank you, sir. Mr. Tress. I'm going to wrap up the proof of loss to respond to a couple of comments. Waivers are often granted. I think Mr. Mayo is incorrect in that. There's nothing in this record, and it's a court of record dealing with a waiver, but just as a general principle, waivers are often granted. There is a process. There has to be a line drawn in the sand. The policy says 60 days. When there is a huge catastrophe, FEMA does grant extensions of the proof of loss. For Katrina, it was a year. For Sandy, it was two years. For Hurricane Ike, there's a couple of extensions, and it went out 11 months, almost a year. But they have to draw a line in the sand somewhere. And when that deadline comes, you have to submit all of your information, your proof of loss, and your proof of loss must include the supporting documentation. It has to be before that deadline. What if you don't get it in? If you wait to the last minute, you're running a risk. But if you get your proof of loss in, and let's say it is deficient, and then pass that deadline, you actually get the proper documentation, a line-by-line estimate, and that is submitted to the company. Well, the company has a financial interest to take that, look at it, see if there is more money to be paid, and then a lot of times the company will go seek a waiver from FEMA on behalf of the insured to pay that amount. That's what happens in reality. But the draw on the line in the sand, you have to have it in before that deadline, whether it's 60 days, a year, two years, whatever it is. It can be amended, you said. Your Honor? It can be amended. And there is another way to do it as well. After Hurricane Isabel, there was an appeal process put into place before you go to the court. So if you disagree with the independent adjuster, what the company did, you can actually do an appeal to FEMA. And once you exhaust that, if you don't like that, if you don't get what you want, then you can go to the federal courts. But you have to have presented all of your claim, you have to have met all the conditions precedent prior to filing suit, or you violate Article 7R of the policy. One of the things that's on page 591 of the trial record, and it goes back to what Judge Jolly was talking about, Mr. Bierman had instructed Mr. Lovato to do a lump sum. Mr. Lovato testified also on page 591 that he could have done a line-by-line estimate, but that's what was chose to be done at that time, and that proof of loss was submitted toward the latter part of that 11-month extension for submitting a proof of loss. And to go back to the question, well, why doesn't every insurer just submit a proof of loss for limits? Well, there's got to be checks and balances. That's why they make you sign and swear to a document. If you want federal dollars, you've got to make sure that, hey, I have reviewed all of this documentation, and I am swearing an oath I am entitled to these federal dollars and their support for that. Whether or not it's covered or not covered, that's what you debate either on appeal or you debate in court in front of the federal judge that you have to bring with it the properties located. Rules don't require that that separate support be signed by the claimant? No. The attached justification? No. I'm not aware of any rule or case law that says that the estimate has to be signed and sworn. So in this case, he never saw it? And that's what Judge Fresher had a problem with in this case is that Mr. Pye renovated his property, and Mr. Mayo is absolutely correct. He thought, hey, when I saw this proof of loss, I think it may cost that to repair my property. But he never saw the Lovato estimate justifying that amount. And then Mr. Lovato testified on cross-examination that he had no input on the creation of the proof of loss. So the person signing and swearing on the proof of loss never saw the Lovato lump sum, and the guy who did, Mr. Lovato, who did the lump sum, he never saw the proof of loss. He had no input into that. It was Mr. Bierman putting the information together and submitting it into the company. I think that's what Judge Fresher had a problem with. That is ganging the system. There is a ruling that you have to have a dollar for dollars. There is a fifth circuit case called Kidd v. State Farm that for every dollar amount that you're asking for, there has to be a proof of loss. But to go back to the very first question at the very beginning. I don't know the answer to that. Because that's the second case you've raised that he's never had a chance to look at. If it's on point. What's the site for Kidd v. State Farm? That's all right. You've got 25 seconds. If the brief originally was inadequate four pages, that's hard for him to respond to. Now if you put out new cases. Well, that was dealt with the proof of loss. I don't think our briefing was inadequate on the proof of loss. That dealt with the one satisfaction rule. I don't have the site off the top of my head. But there's a case that you have to have it for every proof of loss. But there is no case, going back to your first question, Judge, where does the proof of loss, there's a case that does the documentation have to exactly match that? And I started by saying no. And the reason why is let's say that your line-by-line estimate is for $270,000, but your limits are only $175,000. Well, that's not going to match. That's why my first statement was if it's less than the limits, you've got to justify that amount under Article 7J5. Okay, Mr. Tracy. Thank you for your arguments. That completes the arguments for this panel this week. So this panel stands adjourned.